UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 04-30066-MAP

SUSAN O'CONNNELL, )
        Plaintiff )
)
v. )
)
METROPOLITAN LIFE INS. CO. )
        Defendant )

PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER
MOTION FOR SUMMARY JUDGMENT

I. INTRODUCTION

The issue before this court is whether Defendant, Metropolitan Life Insurance, Co. (MetLife) acted arbitrarily and capriciously in terminating the Plaintiff, Susan O'Connell's, long-term disability benefits.

II. STATEMENT OF FACTS

The Plaintiff, Susan O'Connell was a long-time employee of Monarch Life Insurance, Co. (Monarch). Monarch provided employees with a Long-Term Disability (LTD) benefit. This benefit was administered through the Defendant, MetLife. As a result of severe knee pain and Reflex Sympathetic Dystrophy (RSD), the Plaintiff last worked on September 29, 2000. As a result of these medical conditions, the Plaintiff applied and was granted Long-Term Disability benefits from the Defendant, MetLife. In the Fall of 2002, MetLife began reviewing the Plaintiff's claim in order to determine whether she was disabled from "any occupation." The Plaintiff's claim, under the new definition of disability, was initially denied on December 18, 2002, but was reinstated on January 6,

2003, when further medical records were received. As part of the reinstatement, MetLife placed a contingency that the Plaintiff was to submit to a Functional Capacity Assessment (FCE) to be performed by a rehabilitation vendor of MetLife's choosing (See MET0131).

Following a series of events, which will be discussed in detail later, the Defendant, MetLife, terminated the Plaintiff's benefits as of July 2, 2003. The Plaintiff appealed the Defendant's termination of her benefits, and on September 18, 2003 was notified of the denial of her appeal (See MET0124); whereupon, the Plaintiff commenced the instant action.

### III. ARGUMENT

Both parties agree that this court should apply the "arbitrary and capricious" standard of review.

The issue here is whether MetLife's termination of Plaintiff's benefits was arbitrary and capricious.

Under ERISA, a decision will not, in the absence of bad faith, be disturbed unless it is "arbitrary and capricious," which is to say, totally unreasonable. <u>Allen v. United Mine Workers of America</u>, 726 F. 2d 352 (1984). In <u>Radford Trust v. first Union Life Insurance Company of America</u>, 321 F. Supp. 2d 226 (2004), the United States District Court for the District of Massachusetts discussed the "arbitrary and capricious" standard in terms of reasonableness, as well. In that case, the Court was interpreting <u>Recupero v. New England Telephone and Telephone Company</u>, 118 F.3d/ 820 (1997) and indicated the Court is not empowered to overturn an incorrect but reasonable decision in cases where the plan vests the administrator or fiduciary with discretion. In the instant case, the plan did vest the administrator with discretion. Thus, the Court has the power to overturn an unreasonable decision.

A.) <u>Decision to Terminate Plaintiff's Benefits Was Based On Mistake of Facts.</u>

The Plaintiff contends that the Defendant based its decision to terminate her benefits on

mistakes of fact, which therefore renders the Defendant's decision arbitrary and capricious.

As grounds for her contention, Plaintiff states that there was only one FCE scheduled, not two as is reflected in numerous references in the record. Significantly, Plaintiff directs this Court's attention to the Diary Review-Report (p. 20). On April 18, 2003, the note reads "by claimant canceling x2 FCE, claim to be denied as without current medical records/ FCE, functionality can not be determined." And on April 29, 2003 (p. 21) the adjustor wrote "because ee turned down 2 previously scheduled FCE appointments, no additional FCE's can be scheduled." The Plaintiff contends there were not two FCE's scheduled, and points to the record in this matter as proof.

In its July 8, 2003 letter, MetLife stated that "an FCE was scheduled for March 21, 2003." The Plaintiff denies that an FCE was scheduled on March 21, 2003. She admits that an FCE was scheduled for April 7, 2003, however. At the very least, the Diary Review-Report does note on March 21, 2003 (p. 18) that a "VM" was forwarded indicating that "when ee was contacted to set up a date to attend the FCE, ee refused." Clearly, then, no FCE was ever scheduled, other than the April 7, 2003 appointment. Because, the administrators were either mistaken, or chose to ignore the facts, the underlying reason for terminating Plaintiff's benefits (missing two FCE's ) was based on wrong information. The Plaintiff contends that this erroneous decision is unreasonable and arbitrary and capricious, and requests this court to remand this matter back to the administrator of her LTD plan.

Furthermore, the record in this matter is devoid of any standard by which missing two scheduled FCE's determines a termination of benefits. The administrators in this matter arbitrarily and capriciously set two missed appointments as grounds for termination of benefits.

Additionally, the Plaintiff contends that the record is devoid of any timeframe within which an FCE must be accomplished. Here, the Plaintiff was first contacted on March 21, 2003 (p. 18 Diary Review) and the note of April 2, 2003 ( Diary Review-Report p. 19) indicates "if a no show,

terminate claim." On April 29, 2003, ( Diary Review-Report p. 21) the note indicates that "because ee turned down two (2) previously scheduled FCE appointments, no additional FCE's can be scheduled." At most, then, the Defendant allowed only thirty-nine (39) days within which the Plaintiff must attend an FCE or be terminated. The Plaintiff contends that this amount of time was arbitrarily and capriciously set by the Defendant, so as to terminate her benefits. It is unreasonable to force a claimant to meet her requirements in one month. It is unreasonable not to inform a claimant of this short window of time.

The Plaintiff also contends that, on its face, the April 29, 2003 note, is evidence of Defendant's arbitrary and capricious termination of her benefits. The adjustor apparently consulted with a supervisor, "Drs", on the issue of scheduling another FCE , but because "Drs" thought, mistakenly, that the Plaintiff already missed two (2) appointments, the decision was that no additional FCE's could be scheduled. Despite, the fact that appointments were not scheduled, the Plaintiff asks: Why can't another FCE be scheduled? Who arbitrarily and capriciously decided that its two strikes and you are out? It is troubling to the Plaintiff, that if the adjustor had read the March 21, 2003 entry, he or she would have known with certainty that no FCE had yet to be scheduled. The Plaintiff contends that this is evidence of the Defendant's bad faith.

B.)   <u>MetLife Acted in Bad Faith in the Scheduling of the FCE.</u>

The Defendant, MetLife, through its employee agent Lynne Coley told the Plaintiff in March 2003, that the Plaintiff would not have to travel more than fifty (50) miles for the FCE (See MET0128). In the Diary Review-Report (p. 18) the March 5, 2003 entry indicates a difficulty in locating an FCE within a reasonable distance.

Prior to receiving the March 26, 2003 letter scheduling the FCE, the Plaintiff spoke with agents of the vendor hired by the Defendant regarding the FCE. The Plaintiff explained to this agent that she wasn't sure if her doctor signed the authorization. Indeed, the Plaintiff's doctor did not

remember signing the authorization. The agent told the Plaintiff to disregard the notice and speak to her doctor. At that time, the Plaintiff did not refuse to attend the FCE. She was, in fact, trying to verify with her own doctor whether it was safe for her to attend an FCE.

The Plaintiff had an appointment scheduled with her doctor on April 17, 2003 (See Exhibit A).

MetLife was well aware of the Plaintiff's concern with speaking to her own doctor about the FCE. On March 25, 2003, the MetLife adjustor notes a phone call to "ee" and in the next note indicates a request for a copy of the "script allowing FCE" (Diary Review Report p. 19). It can be inferred that the Plaintiff requested a copy. There is no note, however, that it was in fact sent. On April 9, 2003, two (2) days after the "missed" FCE, the Plaintiff again requested a copy. It is noted that a 2nd copy was sent (Diary Review-Report p. 20).

The e-mail received by MetLife on April 7, 2003, indicates that Plaintiff wanted to discuss the FCE with her doctor.

On April 9, 2003, the Plaintiff spoke with Gary Inman of MetLife. She explained that she never received the authorization, and she told him that the doctor was denying signing the release (Diary Review-Report p. 20). This conversation took place two (2) days after the April 7, 2003 FCE. Mr. Inman told the Plaintiff he would send another copy to her and he notes that he did (Diary Review-Report p. 20). This act is direct evidence of the bad faith of the Defendant in this matter. From previous notes, the Defendant was aware of Plaintiff's concern. Also, from previous notes, April 2, 2003, (Diary Review-Report p.19) MetLife had already made a decision to terminate if the Plaintiff was a "no show." Despite this knowledge and intent, the Defendant, acting in bad faith, willfully misled the Plaintiff on April 9, 2003 when Mr. Inman indicated he would send her a 2nd copy. In the same note, Mr. Inman noted his skepticism of whether "ee" received the FCE prescription" (Diary Review-Report p. 20).

It is clear, that on April 9, 2003, the Plaintiff believed, rightfully so, that the Defendant was still investigating her claim.

Further, on April 9, 2003, apparently because of his skepticism, the Defendant states "begin assessment for A/O" (Diary Review-Report p. 20). One can only surmise that this note means that the assessment was to begin using only what the claim department had at the time. A strong presumption can be made that this was a foregone conclusion since a decision to terminate based on missed FCE;s had already been made. This, again, is evidence of the Defendant's bad faith in handling of this claim; for how could a claimant prevail when she has not been given the opportunity to fulfill the Defendant's wishes. It is certainly fertile ground for bad faith claim handling when the insurers, as the Defendant did here, makes a contingency, fails to allow the contingency to be met, and then denies the claim based on its own actions.

On April 18, 2003, the Defendant again notes that the claim is to be denied. And, yet, on April 23, 2003 when the Plaintiff calls requesting an FCE closer than 50 miles, the Plaintiff is told that he would check and return her call (Diary Review-Report p. 20). Not surprisingly, no call was returned. The adjustor here acted in bad faith by telling her he would try to find one closer; even though he didn't believe her. The Plaintiff waited to hear about her FCE until she received the letter of July 8, 2003 informing her that she had been terminated. It is bad faith to manipulate the claim so as to frustrate the purposes of the claimant. The claimant, Plaintiff, stood ready to attend the FCE. She knew that if she didn't, she would be terminated. It would be against her best interests to disregard her required attendance at an FCE. The Plaintiff was ill-informed at best and misinformed at most. The Defendant's handling of this matter has been totally unreasonable and in bad faith.

It appears from the reading of the adjustors notes that a boot-strap investigation was made to support its untimely and unwarranted decision with regard to the termination of this claim.

## IV. CONCLUSION

This court must rule, on the record before it, whether Defendant's decision in this matter was made arbitrarily and capriciously. The Plaintiff contends, as outlined above, that the decision was flawed in many ways. First, the decision to terminate was based on the erroneous assumption that the Plaintiff missed two FCE's; second, the decision to terminate was fraught with bad faith claim handling. Based on the review of these records, it can only be concluded that the Defendant's decision to terminate was arbitrary and capricious.

RESPECTFULLY SUBMITTED

By: *[signature]*
WILLIAM G. CULLINAN
1391 Main Street, Suite 1022
Springfield, MA 01103
Tel (413) 781-5311
Fax (413) 746-2707
BBO No. 546110

**South Hadley Wellness Center**
488 Newton Street
S. Hadley, MA 01075
413-532-9092

Patient: Susan O'Connell   Allergies: Codeine
DOB: 12/8/55
DOS: 4/17/03
Age: 47
Smoker / Nonsmoker
Meds:

Chief Complaint / History of Present Illness: F/U.

Susan is concerned c̄ the independent exam c̄ a P.T. that may last 4-6 hours

She is afraid that she won't be able to last that long due to her low back and knee pain

T: 
BP: 112/70    P: 72    R: 16
              W: 133

General:

HEENT / Neck:

Lungs:

Heart:

Abdomen:

Extremities: Mottled discoloration both knees Exquisite tenderness to superficial palpation both knees.

Patient: *Susan O'Connell*　　　　DOS: 4/17/03

Impression:

Reflex Sympathetic Dystrophy
Bilateral Knee pain
Lumbar Discogenic disease

Plan:

Note for insurance Co. given c̄ clarification that pt may need frequent pauses during tests or even need the test to be performed on separate days.

*[signature]*

CERTIFICATE OF SERVICE

I, William G. Cullinan, Esq., hereby certify that on this 1 day of April, 2005, I caused a copy of the foregoing to be served on the defendants, by mailing a copy of same postage prepaid, first class mail, to attorney of record: James F. Kavanaugh, Jr., Esq., CONN KAVANAUGH ROSENTHAL PEISCH & FORD, LL, Ten Post Office Square, Boston, MA 02109.

/s/ William G. Cullinan
WILLIAM G. CULLINAN